UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-21494-CIV-UNGARO/Turnoff

MARIA DOMINGUEZ,

      Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court on Plaintiff's Motion for Summary Judgment **[DE 12]**, and Defendant's Motion for Summary Judgment **[DE 18]**.  This matter was referred to the undersigned by the Honorable Ursula Ungaro, United States District Judge for the Southern District of Florida. **[DE 19]**. The issue before the Court is whether the record contains substantial evidence to support the denial of benefits to Plaintiff.

## Procedural Background

On October 20, 2004, Plaintiff Maria Dominguez applied for disability benefits and for Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act ("Act"), respectively. [R. 72-74, 427].[1]  Her applications, which alleged disability as of September 27, 2004, were denied initially [R. 46, 48-50, 430-34], and upon

_____

[1]All references are to the record of the administrative proceedings which were filed as part of Defendant's Answer at docket entry number 8.

CASE NO. 08-CIV-21494-UNGARO/Turnoff

reconsideration. [R. 47, 53-55, 436-40].

Following a hearing held on February 6, 2008 [R. 142-165], the Administrative Law Judge ("ALJ"), rendered an unfavorable decision finding that Plaintiff was not under any "disability" as defined under the Act and denying her request for benefits. [R. 18-32]. Plaintiff's request to the Appeals Council of the Social Security Administration for review was denied. [R. 3-5].

## Factual Background

Plaintiff, who was 53 years old at the time of the hearing, testified that she came to the United States in 1984. [R. 445]. She completed the twelfth grade in a foreign country and does not speak English. [R. 445, 452]. Plaintiff described her prior work for the past fifteen years as a maid/house cleaner for a cleaning company. [R. 452]. Plaintiff further indicated that she lives with her boyfriend, who works full time. [R. 449]. She has children who live in town and occasionally visit her and take her to doctor's appointments. [R. 451].

In September 2004, Plaintiff suffered a subarachnoid hemorrhage and ruptured aneurysm. [R. 228-230]. She testified that she had not worked since then. [R. 445]. On October 12, 2004, a brain scan indicated that Plaintiff's subarachnoid hemorrhage had resolved and an intraventricular hemorrhage appeared to be resolving. [R. 280]. By October 19, 2004, Plaintiff was mobile, alert, coherent and stable. [R. 348]. On October 22, 2004, Plaintiff's physician, Dr. Stuart Joseph, M.D., conducted an assessment indicating that, due to a subarachnoid brain hemorrhage, Plaintiff was "permanently confused and unable to handle her personal or monetary affairs." [R. 397].

CASE NO. 08-CIV-21494-UNGARO/Turnoff

Thereafter, on December 28, 2004, Plaintiff was seen by Dr. Hector J. Meruelo, M.D., a consultative general examiner, for a complete medical evaluation at the request of the Social Security Division of Disability Determinations. [R. 389]. Dr. Meruelo found that, although Plaintiff appeared to have some degree of depression since her hemorrhage, she had no neurological impairment. [R. 392]. Then, on January 27, 2005,[2] Dr. Juan M. Patterson-Vazquez, Psy.D., a consultative clinical psychologist, evaluated Plaintiff at the request of the Medical Disability Adjudicator of the Division of Disability Determinations. [R. 383]. Plaintiff reported to Dr. Vazquez that she performs household chores, such as laundry, cooking, and groceries, and that she spends most of her time with her boyfriend. [R. 384]. Dr. Vasquez found that Plaintiff's "mood showed a mixture of anxiety, depression and tearful pessimism as her affect was labile." [R. 385]. Based upon the battery of tests he conducted, Dr. Vazquez found that Plaintiff's intellectual abilities and her working memory index were within the average range. [R. 385, 387-88]. He concluded that Plaintiff was able to understand and retain simple instructions, was aware of the exchange values of money, and interacted satisfactorily with the examiner. [R. 388].

On April 21, 2005, Plaintiff went to the Miami Behavioral Health Center, where she presented with symptoms of depressed mood, blunt affect, impaired memory, visual hallucinations, sadness and impaired memory. [R. 209]. Plaintiff appeared to be alert, well-oriented, appropriately dressed, and had unremarkable thought process and content.

---

[2]The Psychological Evaluation of Dr. Vazquez is dated January 27, 2004. Given that he references Plaintiff's aneurysm, which took place in September 2004, the date on the evaluation is mistaken and should be January 27, 2005.

CASE NO. 08-CIV-21494-UNGARO/Turnoff

Id.  According to the intake notes, Plaintiff was to remain there until her symptoms subsided. [R. 214].  She was diagnosed with depressive disorder. [R. 198-201]. Subsequently, Plaintiff sought treatment from Dr. Nelson Hernandez, M.D., at the Miami Behavioral Health Center. [R. 219].  Dr. Hernandez saw Plaintiff several times throughout 2005, 2006, and 2007.  During a majority of visits, Dr. Hernandez noted that Plaintiff's appearance was disheveled, her mood was depressed and anxious, her thought process and content were unremarkable, she was alert and oriented to time, place, and person, and her insight, judgment, and reliability were fair. [R. 404-410, 419-421, 219-222].  Dr. Hernandez conducted a Medical Assessment of Ability to Do Work-Related Activities on December 19, 2005 [R. 398-99], and again on September 19, 2007 [R. 416-17].  In both Assessments, Dr. Hernandez rated Plaintiff poorly in all work-related cognitive functions. [R. 398-99; 416-17].

A State agency review physician and two State agency review psychologists examined Plaintiff at various times. [R. 30].  Of record is the  Mental Residual Functional Capacity Assessment of Plaintiff conducted by Lee Reback, Psy. D., a State agency reviewing psychologist, on August 18, 2005. [R. 195-97].  Reback rated Plaintiff as "not significantly limited" in most categories, but found her to be "moderately limited" with respect to completing a normal workday and workweek, as well as understanding and carrying out detailed instructions. Id.

At the administrative hearing before the ALJ on February 6, 2008, the ALJ heard

CASE NO. 08-CIV-21494-UNGARO/Turnoff

testimony from Plaintiff and Nicholas Fidanza, a vocational expert.[3]  [R. 24].   Plaintiff

testified that, since her aneurysm, she has had difficulty with her short-term memory. [R.

448].  She indicated that she stays in bed during the day and sometimes watches a little

television. [R. 449, 451].  She does not go out anymore and has no hobbies or interests.

[R. 451, 455].   Plaintiff further testified that she Plaintiff is being treated by Dr. Nelson

Hernandez, M.D., every two months. [R. 446].  She takes Dilantin, Zoloft, and Lipitor, but

does not suffer any side effects therefrom. [R. 449].

Fidanza, the vocational expert, answered a series of hypothetical questions posed

by the ALJ and Plaintiff's counsel.  The ALJ posed a hypothetical question to Fidanza

about an individual of Plaintiff's age, education, and past relevant work experience, who

could perform medium work[4] but was limited to unskilled work involving short, simple

instructions and one to two-step repetitive tasks, no strict production quotas, no moving

---

[3]"A vocational expert or specialist may offer relevant evidence within his or her
expertise or knowledge concerning the physical and mental demands of a claimant's
past relevant work, either as the claimant actually performed it or as generally
performed in the national economy. Such evidence may be helpful in supplementing or
evaluating the accuracy of the claimant's description of his past work. In addition, a
vocational expert may offer expert opinion testimony in response to a hypothetical
question about whether a person with the physical and mental limitations imposed by
the claimant's medical impairment(s) can meet the demands of the claimant's previous
work, either as the claimant actually performed it or as generally performed in the
national economy." 20 C.F.R. § 404.1560(b)(2).

[4]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or
carrying of objects weighing up to 25 pounds. If someone can do medium work, we
determine that he or she can also do medium, light, and sedentary work." 20 C.F.R. §
404.1567(c).

CASE NO. 08-CIV-21494-UNGARO/Turnoff

assembly lines, and only occasional changes in the work setting. [R. 459]. In addition, the hypothetical individual might be absent up to one full day a month due to her condition. Id. The ALJ asked the vocational expert if, given theses limitations, there were any medium jobs Plaintiff could perform. Id.  The vocational expert opined that, even with those limitations, Plaintiff could perform past relevant work that was medium and unskilled, light and unskilled or involving small product assembly. Id.  Moreover, Fidanza testified that these jobs could be performed without knowledge of the English language. [R. 463]. Plaintiff's attorney then posed a series of hypothetical questions to the vocational expert involving an individual of Plaintiff's age, education, lack of knowledge of English, and past relevant work experience. [R. 460-462].  The first one involved an individual with the limitations set forth in Dr. Hernandez' Assessment of December 19, 2005, which rated Plaintiff poorly in almost all categories of ability to make adjustments. [R. 460, 398-99]. Fidanza testified that an individual at that level of functioning could not sustain competitive employment of any type. [R. 460]. The second hypothetical question involved Dr. Hernandez' second Assessment dated September 19, 2007, which rated Plaintiff poorly in every category of ability to make adjustments. Id.  Fidanza testified that his response would be the same as for the previous question. [R. 461].  The third hypothetical question posed by Plaintiff's counsel involved an individual with the limitations set forth in Reback's Assessment dated August 18, 2005, which rated Plaintiff as moderately limited in her ability: to understand, remember, and carry out detailed instructions; to maintain attention and concentration for extended periods; to complete a normal workday and workweek

CASE NO. 08-CIV-21494-UNGARO/Turnoff

without psychologically based interruptions; and to respond appropriately to changes in the work setting. [R. 461, 195-97]. Fidanza testified that the inability to complete a normal workday and workweek without interruption constituted a moderate limitation which would not allow a person to maintain employment. [R. 461].

Following the hearing, the ALJ issued a report on February 11, 2008, in which he determined that Plaintiff was not under a disability during the relevant time period, as defined by the Social Security Act. [R. 31]. The ALJ determined that Plaintiff suffered from the severe impairments of a "history of subarachnoid hemorrhage and a ruptured aneurysm with right frontal ventriculostomy, and a major depressive disorder and/ or depressive disorder and/or mood disorder (20 C.F.R. § 404.1520(c) and 416.920(c))." [R. 26]. However, the ALJ concluded that the record before him failed to establish "an impairment or combination of impairments that meets or medically equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." [R. 26, 31].  Finally, the ALJ found that, based on the whole record, Plaintiff "retains the residual functional capacity to perform a reduced range of medium work." [R. 27].  He further found that Plaintiff was "capable of performing past relevant work as a housecleaner [*sic*]." [R. 31].

## Analysis

Judicial review of factual findings in disability cases is limited to determining whether the ALJ's findings were based upon substantial evidence and whether the correct legal standards were applied. Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); 42

CASE NO. 08-CIV-21494-UNGARO/Turnoff

U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). In determining whether substantial evidence exists, "[t]he district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [ALJ's] decision." Foote v Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). The reviewing court must also be satisfied that the ALJ's decision correctly applied the legal standards. Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). The court may not re-weigh evidence or substitute its judgment for that of the ALJ. Baker on Behalf of Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989). In fact, even if the court finds that the evidence preponderates against the ALJ's decision, it must, nevertheless, affirm so long as the decision is supported by substantial evidence. Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); 42 U.S.C. § 405(g). "This restrictive standard of review applies only to findings of fact and 'no similar presumption of validity attaches to the [ALJ's] conclusions of law, including determination of the proper standard to be applied in reviewing claims.'" Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (citations omitted). Failure by the ALJ to apply the correct legal standards or to provide the reviewing court with sufficient reasoning to determine that the correct legal principles were followed are grounds for reversal. Cornelius v. Sullivan, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

The Social Security Administration regulations provide a five-step sequential evaluation process for determining whether an individual is disabled. 20 C.F.R. §§

CASE NO. 08-CIV-21494-UNGARO/Turnoff

404.1520(a); 416. 920(a).  First, the ALJ must determine whether the claimant is engaging in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I).  If so, then a finding of non-disability ensues thereby ending the inquiry. 20 C.F.R. § 404.1520(b).

In step two, the ALJ considers the medical severity of the impairment and determines whether the claimant suffers from a severe impairment or a combination of impairments. Id. at § 404.1520(a)(4)(ii).  If no such finding is made, then there is a finding of non-disability, and the inquiry ends. Id. at § 404.1520(c).

At step three, the ALJ compares the claimant's severe impairments to those found in the listing of impairments. 20 C.F.R. § 404.1520(d), Subpart P, Appendix I. The nature of certain impairments is so severe that, whether considered alone or along with other impairments, if established, require a finding of disability without further inquiry into the claimant's ability to perform other work. Gibson v. Heckler, 762 F.2d 1516, 1518, n.1 (11th Cir. 1985).  If the impairment meets or equals a listed impairment, a finding of disability will result and benefits will be awarded. 20 C.F.R. § 404.1520(d).  If the claimant's impairment does not meet or equal a listed impairment, then the ALJ must assess the residual functional capacity based on all the evidence of record. 20 C.F.R. § 404.1520(e).[5]

Step four involves assessment of the claimant's residual functional capacity and past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv).  If able to perform past relevant work, then a claimant is found not to be disabled. Id.

---

[5]A claimant's "residual functional capacity" is a his/her remaining ability to do work despite his/her impairments. 20 C.F.R. § 404.1545(a)(1).

CASE NO. 08-CIV-21494-UNGARO/Turnoff

If the ALJ cannot make a determination applying the first three steps, then claimant's residual functional capacity assessment will be compared with the physical and mental demands of past relevant work. 20 C.F.R. § 404.1520(f).  If the claimant can still perform the work, then a finding of no disability is made. Id.  If the claimant cannot perform his/her past relevant work, then a *prima facie* case of disability is established, and the analysis proceeds to the final step. 20 C.F.R. § 404.1520 (e)-(f).

In step five, the ALJ considers the claimant's residual functional capacity, age, education, and work experience to determine if there is other work available in the national economy which the claimant can perform. 20 C.F.R. §§ 404.1520(a)(4)(v);(g).

The initial burden is on the claimant to prove that she is unable to perform past relevant work. Barnes, 932 F.2d at 1359.  Inability to perform previous work pertains to the kind of work previously performed, not merely to a specific prior job. Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1993).

As stated *supra*, in the instant case, the ALJ found that, based on the record as a whole, Plaintiff retained the residual functional capacity to perform a reduced range of medium work and was capable of performing past relevant work as a house cleaner. Therefore, Plaintiff was not under a disability  during the relevant time period as defined in the Social Security Act. [R. 27, 31]; 20 C.F.R. §§ 404.520(f) and 416.920(f).  Plaintiff raises three issues with respect to the ALJ's ruling.  Plaintiff contends that the ALJ improperly failed to give substantial weight to the medical opinion of her treating physician, Dr. Hernandez, and gave more weight to the opinion of consultative physicians.  Plaintiff

CASE NO. 08-CIV-21494-UNGARO/Turnoff

further contends that the ALJ failed to pose a complete hypothetical question to the vocational expert by not including limitations which were of record.

First, Plaintiff contends that the ALJ erred by failing to give substantial weight to the records and conclusions of her treating psychiatrist, Dr. Nelson Hernandez, M.D.  It is true that the opinion of a treating physician is to be accorded substantial weight, unless there is good cause to discount it.  Sabo v. Chater, 955 F. Supp. 1456, 1462 (M.D. Fla. 1997) (citing Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991)).  However, the opinion of a treating physician "is not necessarily dispositive on the issue of disability." Johns v. Bowen, 821 F.2d 551, 555 (11th Cir. 1987) (citing Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986)).  Good cause to discount the opinion of a treating physician may be found where the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citing Lewis, 125 F.3d at 1440).  Thus, good cause to discount the opinion of a treating physician exists where the doctor's opinion is not supported by the objective medical evidence or is only conclusory. Morgan v. Astrue, No. 07-CV-60726, 2008 WL 4613060, at *14 (S.D. Fla. Oct. 15, 2008) (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)).  If the ALJ gives less weight to the opinion of the treating physician, then the reasons for doing so must be clearly articulated. Lewis, 125 F.3d at 1440.

CASE NO. 08-CIV-21494-UNGARO/Turnoff

Here, the ALJ found that Dr. Hernandez's December 2005 and September 2007 assessments of ability to do work-related activities were not entitled to substantial weight, because they were not supported by his own notes and were inconsistent with the findings of independent consultative examiners. [R. 29]. In reaching this conclusion, the ALJ considered Dr. Hernandez' records, independent consultative psychological evaluations, as well as other treating source assessments. A review of Dr. Hernandez' treatment notes, which span from approximately May 2005 through December 2007, reveals that, although Plaintiff appeared to be disheveled and depressed, her thought process and content were unremarkable, she was alert and oriented, and her insight and judgment were consistently fair. [R. 404-410, 419-421, 219-222]. Notwithstanding, Dr. Hernandez' assessments, conducted in December 2005 and September 2007, both indicated that Plaintiff would have a poor ability to make occupational, performance and personal adjustments, such that she was unable to work.[6] [R. 398-99, 416-17]. Plaintiff's independent psychological evaluation by Dr. Vazquez in January 2005, found that Plaintiff was fully oriented, was able to recall objects after five minutes, was able to perform simple calculations and correlations, and was generally responsive. [R. 384-85]. Further, her test scores indicated that she was functioning within the average range of intellectual functioning [R. 385], and appeared to understand and retain simple instructions. [R. 388].

---

[6] "Poor," as defined within the assessment form, means that a person's "[a]bility to function in this area is seriously limited but not precluded." [R. 398].

CASE NO. 08-CIV-21494-UNGARO/Turnoff

The ALJ further noted that there was neither evidence of Dr. Hernandez having conducted objective testing of Plaintiff's ability to perform work activities during the treatment period, nor evidence that Plaintiff ever received any treatment other than outpatient medication management. [R. 30]. Based upon his review of the record, the ALJ noted that there was no evidence that Plaintiff had difficulty maintaining her appointments or that her symptoms had resulted in decompensation or hospitalization since her aneurysm in 2004. [R. 31]. In light of all these circumstances, the ALJ found that Plaintiff's treatment record was not the kind "one would expect to find for an individual whose depression is so debilitating that she has not been able to perform even the basic mental demands of simple, repetitive unskilled work for over 3 years." [R. 30].

The ALJ's determination that Plaintiff's treating physician's opinion should not be accorded substantial weight is supported by the substantial weight of the evidence and is the result of the correct application of legal standards. Moreover, the ALJ clearly articulated his reasoning for finding that the evidence in this case does not support Dr. Hernandez's medical opinion. Therefore, the undersigned finds that there was "good cause" for the ALJ to discount the opinion of Plaintiff's treating psychiatrist. Accordingly, it is **RESPECTFULLY RECOMMENDED** that this Court find that the ALJ committed no error in his consideration of the treating physician's medical opinion. Thus, the ALJ's findings and conclusions should not be disturbed on appeal.

Plaintiff next argues that the ALJ erred by giving more weight to the opinion of consultative physicians than to the opinion of Plaintiff's long-term treating psychiatrist, Dr.

CASE NO. 08-CIV-21494-UNGARO/Turnoff

Hernandez.  A treating doctor's opinion is generally given more weight than a consulting doctor's opinion. Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir. 1984) (citing Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981).  However, as stated *supra*, the ALJ may reject a treating doctor's opinion upon a finding that it is contrary to the evidence. Id.

Plaintiff's main contention is that the ALJ erred by giving the consultative physicians' opinion more weight because the two consultative evaluations that were conducted by Dr. Vazquez and Dr. Meruelo predate the medical records from the Plaintiff's psychiatric treatment. As such, Plaintiff argues there were no psychiatric medical records at the time she was examined by the consultative psychologists.  Further, Plaintiff contends that the conclusions of the consultative psychologists are in line with the conclusions of Dr. Hernandez that Plaintiff's mood was a mixture of anxiety, depression and tearful pessimism.  However, with respect to the fact that the assessments were made before treatment began, the ALJ did not base his decision solely on the two consultative assessments. The ALJ noted that he also gave substantial weight to the State agency review psychologists. [R.30].  In particular, the ALJ focused on Reback's assessment noting that he had "given somewhat greater weight" to it, because she had reviewed Plaintiff's outpatient psychiatric treatment notes from the Miami Behavioral Health Center. Id. The ALJ considered Plaintiff's argument that Reback's assessment supported a finding of disability insofar as it indicated that Plaintiff was "moderately limited" in her ability to complete a normal workday and workweek without an interruption caused by psychological symptoms. [R. 196].  As discussed *supra*, at the hearing, Plaintiff's counsel posed a

CASE NO. 08-CIV-21494-UNGARO/Turnoff

hypothetical question to the vocational expert containing this limitation. [R. 461].   The vocational expert testified that such a limitation "would probably prohibit a person from sustaining employment." Id.   Notwithstanding, the ALJ found that Reback's classification could not be viewed in a vacuum. [R. 30].   The ALJ noted that the rest of Reback's assessment, which consisted of 19 other mental activities, showed that Plaintiff had no significant limitations in, *inter alia*, the ability to perform activities within a schedule, maintain regular attendance, and be punctual. Id.   Moreover, the ALJ noted that the third section of the assessment is the one containing the actual mental assessment of Plaintiff's ability to perform in a work setting. Id.   According to the ALJ, nothing in the third section supported a finding that Reback considered Plaintiff unable to work in an unskilled, low stress environment on the sustained basis necessary to maintain employment. [R. 31]. As to the claim that the consultative examiners' results support Dr. Hernandez's subsequent findings, as stated *supra*, the ALJ actually found that Dr. Hernandez's findings were in conflict with his notes and the consultative examiners' opinions, and were not supported by objective medical testing. [R. 25, 29].

Further, the ALJ noted that, based on the record as a whole, Plaintiff retained "the residual functional capacity to perform a reduced range of medium work." [R. 27].   "[A]t the Appeals Council review level..., the [ALJ]...is responsible for assessing [the] residual functional capacity." 20 C.F.R. § 404.1546(c). The ultimate question of whether a claimant is disabled, as defined by the Social Security Act, is reserved to the Commissioner, not to a physician. 20 C.F.R. § 404.1503. The ALJ's residual functioning finding is consistent with

CASE NO. 08-CIV-21494-UNGARO/Turnoff

Plaintiff's credible limitations resulting from her conditions, and is supported not only by the consultative psychologists' opinions, but also by the state agency consultants. [R. 382, 392, 187-97].

The evidence as a whole appears to contradict Dr. Hernandez's opinion of Plaintiff's ability to work.  As such, the ALJ had good cause to discount the treating physician's opinion and afford greater weight on the assessments and opinions rendered by the consultative physicians. The undersigned finds that the ALJ's decision is supported by the substantial weight of the evidence, and that the correct legal standards have been applied. Accordingly, it is **RESPECTFULLY RECOMMENDED** that this Court find that the ALJ committed no error by giving more weight to the opinion of the consultative physicians over the opinion of the treating physician.  The ALJ's findings should not be disturbed on appeal.

Finally, Plaintiff argues that the ALJ erred by failing to pose a complete hypothetical question to the vocational expert because he failed to include all the limitations which were documented in the record. Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (citing Jones v. Apfel, 190 F.3d 1224,1229 (11th Cir. 1999) ("In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments").  However, "[a] hypothetical question posed to the vocational expert is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true by the ALJ." Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001). The ALJ is not obligated to include any alleged impairments that he

CASE NO. 08-CIV-21494-UNGARO/Turnoff

properly rejected as untrue or unsubstantiated. Id.

In this case, the ALJ noted that he gave substantial weight to the vocational expert's testimony regarding Plaintiff's ability to perform past relevant work as a house cleaner based on the vocational expert's answer to the hypothetical question he posed. [R. 31]. Plaintiff argues that the vocational expert's answer to the ALJ's question was invalid because the hypothetical did not include the limitations that Plaintiff's treating psychiatrist, Dr. Hernandez, or the State agency psychologist, Reback, gave Plaintiff.

The ALJ asked the vocational expert if, assuming Plaintiff could do medium work, but was "limited to unskilled work, involving short simple instructions, up to two step repetitive tasks, no strict production quotas, no moving assembly lines, at most occasional changes in the work setting, and due to her symptoms she might be absent up to one full day or eight hours a month," are there any medium jobs she could do. [R. 459]. The vocational expert testified that she could do past relevant work.  The ALJ then asked what would happen if Plaintiff was limited to light work. Id.  The vocational expert responded that Plaintiff could work as a maid or even in small product assembly. Id.

Plaintiff argues that these hypothetical questions were deficient because they failed to include all limitations found by Dr. Hernandez.  Since the ALJ found that Dr. Hernandez' opinion was not supported by his own notes or the record evidence, the ALJ could have properly excluded these impairments from the hypothetical questions he posed to the vocational expert. Hunt, 250 F.3d at 625; see also, Graham v. Bowen, 790 F.2d 1572 (11th Cir. 1986) (if an element of a hypothetical is not supported by substantial evidence the ALJ

CASE NO. 08-CIV-21494-UNGARO/Turnoff

may reject it).

In turn, the ALJ found that the hypothetical questions posed by Plaintiff's attorney to the vocational expert were not entitled to substantial weight. [R. 31]. Plaintiff's attorney asked the vocational expert if, assuming an individual with the same vocational background as Plaintiff and the same limitations listed in Dr. Hernandez' assessments, such a person would be able to perform Plaintiff's past relevant work. [R. 460]. The vocational expert testified that such level of functioning "would not be compatible with sustained competitive employment of any kind." Id. Then, when Plaintiff's attorney asked the vocational expert to consider a claimant who only had the limitation that she could not complete a workday and a workweek, as listed in Reback's assessment, the vocational expert testified that "moderate limitation on both things, workday and workweek, would probably prohibit a person from sustaining employment." [R. 461]. The ALJ noted that no one defined the term "moderately limited," and the hypothetical was not posed in context since none of the other responses to the mental activities listed on Reback's assessment were considered. [R. 31]. Further, the ALJ noted that,

> "Section I of the MRFC form  [where the hypothetical limitation was listed] is 'merely a worksheet to aid in deciding the presence and degree of functional limitations,...and does not constitute the RFC (residual functional capacity) assessment'. It is in [Section III] that the actual mental RFC assessment is recorded, explaining the conclusions indicated in Section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." (Citations omitted). [R. 30].

The ALJ found that, in Section III, there was no indication that Reback believed Plaintiff would be unable to adequately function in an unskilled, low stress environment, on a

CASE NO. 08-CIV-21494-UNGARO/Turnoff

regular and sustained basis necessary to maintain employment. [R. 31]. Finally, while Plaintiff notes that the ALJ did not cite any Eleventh Circuit cases in support of his determination that the vocational expert's testimony on the hypothetical questions posed by Plaintiff's attorney were not entitled to substantial weight, the ALJ did cite valid, persuasive authority, and there is support for the ALJ's determination in the Eleventh Circuit case law. See Graham, 790 F.2d at 1572. In sum, since the residual functional capacity test did not indicate that Plaintiff could not perform her past work, and since the record as a whole indicated that Plaintiff was able to function independently on a regular and sustained basis, the ALJ had reason to give less weight to the vocational expert's testimony with regard to the hypothetical posed by Plaintiff's attorney. [R. 31].

Finally, even if Plaintiff's only limitation was that she could not complete an entire workday and workweek, as stated in her attorney's hypothetical, the ALJ noted that there was case law supporting the conclusion that a "moderate limitation" in her ability to complete a workday and workweek did not prevent her from working. Id.; Johansen v. Barnhart, 314 F.3d 283 (7th Cir. 2002) (upholding ALJ's decision that claimant was not disabled despite moderate limitation in ability to complete a normal workday and workweek).

The undersigned finds that the ALJ's hypothetical included all the limitations and impairments that were supported by the substantial evidence of this case. The limitations included in Plaintiff's counsel's questions were not supported by the record evidence. As such, it was appropriate for the ALJ to give substantial weight to the vocational expert's

CASE NO. 08-CIV-21494-UNGARO/Turnoff

testimony in answering the hypothetical questions he posed versus the questions posed by Plaintiff's counsel.  The ALJ's decision is supported by the substantial evidence and there is no indication that incorrect legal standards were applied.  Accordingly, it is **RESPECTFULLY RECOMMENDED** that the Court find the ALJ did not commit error in failing to pose a hypothetical question to the vocational expert with the limitations found by Dr. Hernandez.  The decision of the ALJ should not be disturbed on appeal.

## Recommendation

Based on the foregoing, it is **RESPECTFULLY RECOMMENDED** that this Court find that the decision of the ALJ was supported by substantial evidence and that the correct legal standards were applied.    Therefore, it is **FURTHER RESPECTFULLY RECOMMENDED** that the ALJ's decision be affirmed.

Accordingly, the Motion for Summary Judgment filed by Defendant **[DE 18]** should be **GRANTED**, and the Motion for Summary Judgment filed by Plaintiff **[DE 12]** should be **DENIED**.

Pursuant to Local Magistrate Rule 4 (b), the parties have ten (10) days from service of this Report and Recommendation to serve and file written objections, if any, with the Honorable Ursula Ungaro, United States District Court Judge.  Failure to file timely objections shall bar the parties from attacking on appeal the factual findings contained herein. Loconte v. Dugger, 847 F. 2d 745 (11th Cir. 1998); RTC v. Hallmark Builders, Inc., 996 F. 2d 1144, 1149 (11th Cir. 1993).

CASE NO. 08-CIV-21494-UNGARO/Turnoff

**RESPECTFULLY RECOMMENDED** in Chambers at Miami, Florida, this 29th day

of July 2009.

_____

**WILLIAM C. TURNOFF**
**UNITED STATES MAGISTRATE JUDGE**

cc:      Hon. Ursula Ungaro
         Counsel of record

_____